**No. 25-11267**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

ERICA LAVINA AND ANDREA DARLOW, INDIVIDUALLY AND ON BEHALF OF
ALL THOSE SIMILARLY SITUATED,
*Plaintiffs/Appellants*,
v.
JOHN D. ROOD, ET AL., FLORIDA PREPAID COLLEGE BOARD,
*Defendants/Appellees.*

---

On Appeal from the United States District Court for
The Southern District of Florida
Case No. 23-cv-60001-BB

---

**APPELLEES' ANSWER BRIEF**

---

**George T. Levesque**
Florida Bar No.: 555541
Primary Email Address:
george.levesque@gray-robinson.com
Secondary Email Address:
rebecca.martin@gray-robinson.com
**Ashley Hoffman Lukis**
Florida Bar No.: 106391
Primary Email Address:
ashley.lukis@gray-robinson.com
**GRAY|ROBINSON, P.A.**
301 S. Bronough Street, Suite 600
Tallahassee, FL 32301
Phone: 850-577-9090
Fax: 850-577-3311
*Counsel for Appellees*

*Erica Lavina and Andrea Darlow, et al. v. John D. Rood, et al.*
Case No.: 25-11269

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Appellees hereby state and notify the Court that the following individuals, entities and corporations have an interest in the outcome of this appeal:

1.  Agustin, Mark

2.  Bayliss, Slater

3.  Berger Singerman, LLP

4.  Bloom, Beth (The Honorable)

5.  Darlow, Andrea

6.  Fistos, Mark S.

7.  Florida Prepaid College Board

8.  GrayRobinson, PA

9.  Hebda, Kathy

10. Hilgers Graben PLLC

11. Hunt, Patrick M. (The Honorable)

12. Lavina, Erica

13. Levesque, George T.

14. Lovett, Radford

15. Lukis, Ashley

16. Miller, Troy

*Erica Lavina and Andrea Darlow, et al. v. John D. Rood, et al.*
Case No.: 25-11269

17.    Rood, John D.

18.    Schultz, Alec H.

19.    Starkey, Adria D.

20.    State of Florida

21.    Thompson, Kevin

22.    Zebersky, Edward H.

23.    Zimmerman, Jason A.

## CORPORATE DISCLOSURE STATEMENT

The Florida Prepaid College Board is the agency head and administers the Stanley G. Tate Florida Prepaid College Program (also known as the Florida Prepaid College Plan) and the Florida College Savings Program (also known as the Florida 529 Savings Plan), pursuant to the provisions of Part IV, Chapter 1009, Florida Statutes. The Board exercises the powers granted to it pursuant to s. 1009.971(1) and (3) – (6), Florida Statutes.

C-2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument because the Court would significantly benefit from a live exchange with counsel on the complex legal questions presented in this appeal. The case concerns a State's assertion of sovereign immunity under the Eleventh Amendment and whether the exception recognized in *Ex parte Young* applies. While the issues have been thoroughly briefed, oral argument would be beneficial due to the complexity of the constitutional issues involved. This case raises issues state sovereign immunity, the immunity recognized under the Eleventh Amendment and the *Ex parte Young* exception. It also involves analysis under the Contracts Clause and the Fifth Amendment's Takings Clause, both of which implicates the Fourteenth Amendment as applied to the states.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................II

TABLE OF AUTHORITIES ...........................................................................III

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF THE CASE AND FACTS ......................................................2

STANDARD OF REVIEW ............................................................................13

SUMMARY OF ARGUMENT ........................................................................13

ARGUMENT ..............................................................................................15

CONCLUSION ...........................................................................................34

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allied Structural Steel Co. v. Spannaus*,

    438 U.S. 234, (1978) ..................................................................................26

*Baker v. Gulf & Western Indus.*,

    850 F.2d 1480 (11th Cir. 1988)..................................................................31

*Brown v. Board of Education*,

    347 U.S. 483 (1954) ...................................................................................20

*Checker Cab Operators, Inc. v. Miami-Dade County*,

    899 F.3d 908 (11th Cir. 2018)....................................................................30

*Claussen v. Aetna Cas. & Sur. Co.*,

    259 Ga. 333 (1989)....................................................................................27

*Claussen v. Aetna Cas. & Sur. Co.*,

    865 F.2d 1217 (11th Cir. 1989)..................................................................27

*DIRECTV, Inc. v. Imburgia*,

    577 U.S. 47 (2015) .....................................................................................27

*Doe as Next Friend of Doe #6 v. Swearingen*,

    51 F.4th 1295 (11th Cir. 2022)...................................................................31

*Edelman v. Jordan*,

    415 U.S. 651 (1974) .......................................................................... 19, 20

*Eli Lilly & Co. v. Air Express Int'l USA, Inc.*,

   615 F.3d 1305 (11th Cir. 2010) ..................................................................21

*Ex parte Young*,

   209 U.S. 123 (1908) ................................................... 1, 11, 14, 16, 22

*Florida Elections Comm'n v. Davis*,

   44 So. 3d 1211 (Fla. 1st DCA 2010) .........................................................33

*Ford Motor Co. v. Dep't of Treasury of Ind.*,

   323 U.S. 459 (1945) ...................................................................................17

*Givens v. Alabama Dept of Corr.*,

   381 F.3d 1064 (11th Cir. 2004) .................................................................29

*Hutcherson v. Smith*,

   908 F.2d 243 (7th Cir. 1990) .....................................................................30

*Lapides v. Bd. of Regents*,

   535 U.S. 613 (2002) ...................................................................................17

*Luckey v. Harris*,

   860 F.2d 1012 (11th Cir. 1988) .................................................................19

*Maron v. Chief Financial Officer of Florida*,

   136 F.4th 1322 (11th Cir. 2025) ................................................................22

*McDonald v. Hillsborough County School Bd.*,

   821 F.2d 1563 (11th Cir. 1987) .................................................................13

iv

*Milliken v. Bradley*,

    433 U.S. 267 (1977) ..................................................................................20

*New Orleans Waterworks Co. v. Louisiana Sugar-Ref. Co.*,

    125 U.S. 18 (1888) ...................................................................................26

*Peoples v. Sec'y, Dep't of Corr.*,

    8:18-CV-1618-WFJ-AAS, 2023 WL 4947939 ..................................................27

*Peoples v. Sec'y, Florida Dep't of Corr.*,

    23-13008-B, 2024 WL 1070535 (11th Cir. Feb. 1, 2024) ...................................27

*Pharmaceutical Research and Manufacturers of America. v. Williams*,

    64 F.4th 932 (8th Cir. 2023) ........................................................................... 23

*Phillips v. Washington Legal Foundation*,

    524 U.S. 156 (1998) .................................................................................30

*Quern v. Jordan*,

    440 U.S. 332 (1979) ..................................................................................... 19, 20

*Rossborough Manufacturing Company v. Trimble*,

    301 F.3d 482 (6th Cir. 2002) ........................................................................ 23-25

*Seminole Tribe of Florida v. Florida Department of Revenue*,

    750 F.3d 1238 (11th Cir. 2014) .......................................................11-14, 16-18

*Seminole Tribe of Florida v. State of Fla.*,

    11 F.3d 1016 (11th Cir. 1994)..................................................................13

v

*Snyder v. Fla. Prepaid College Bd.*,

   269 So. 3d 586 (Fla. 1st DCA 2019) ........................................ 7, 9, 21, 23, 28, 32

*Stroud v. McIntosh*,

   722 F.3d 1294 (11th Cir. 2013) .........................................................................15

*Summit Med. Assocs., P.C. v. Pryor*,

   180 F.3d 1326 (11th Cir. 1999) .........................................................................16

*Taylor v. City of Gadsden*,

   767 F.3d 1124 (11th Cir. 2014) .........................................................................26

*Va. Office for Protection and Advocacy v. Stewart*,

   563 U.S. 247 (2011) ...........................................................................................15

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,

   535 U.S. 635 (2002) ...........................................................................................21

*Volt Info. Scis., Inc. v. Bd. of Tr's of Leland Stanford Junior Univ.*,

   489 U.S. 468 (1989) ...........................................................................................21

*Washington v. Washington*,

   No. 4:15CV114-RH/CAS, 2016 WL 3351019 (N.D. Fla. June 14, 2016) ..........30

**Statutes**

§ 1009.01, Fla. Stat. ................................................................................... 3, 6, 7

§ 1009.24, Fla. Stat. ................................................................................... 3,-8

§ 1009.97, Fla. Stat ...............................................................................................2

§ 1009.98, Fla. Stat. .................................................................................... 2-7, 18

§ 95.11, Fla. Stat. ...........................................................................................31

Ch. 2007-225,  Laws of Fla. ...................................................................... 3-5, 31

Ch. 2012-134, § 22, Laws of Fla ...........................................................................7

Fla. Admin Code R. 19B-4.001 ................................................................... 6, 7, 27

## Constitutional Provisions

U.S. Const. amend. XI. ............................................................................... 13, 15

U.S. Const. art I, § 10, cl. 1.................................................................................25

**STATEMENT OF THE ISSUES**

1. Whether Plaintiffs' claims seeking to enjoin individual members and the executive director of the Florida Prepaid College Board from future deprivation of alleged contractual benefits supposedly owed under prepaid college plans, and which are brought under the Contracts Clause and the Taking Clause of the United States Constitution, barred by sovereign immunity and the Eleventh Amendment, or do they fall within the ambit of the injunction exception to the Eleventh Amendment recognized in *Ex parte Young*, 209 U.S. 123 (1908).

3. Whether Plaintiffs' claims are time-barred by the statute of limitations, where they allege injury based on the collective action of the members of the Board and the executive director interpreting and administering prepaid college plans, notwithstanding the changes in law from 2007 that govern the Board members' and executive director's actions, which the Florida Prepaid College Board is duty-bound to follow.

**STATEMENT OF THE CASE AND FACTS**

The Board has provided Plaintiffs all the benefits to which they are entitled to under the Master Contracts, and the Board is statutorily prohibited from providing them more, including the value of fee ("TDF"). The Board was created by the Florida Legislature and may only offer the programs authorized by statute. *See* §§ 1009.97, Fla. Stat., et seq.[1] The foundational legal framework upon which Florida Prepaid has been established authorized the Board to provide advance payment plans that covered specified components of tuition and fees at universities and colleges.

The State recognizes postsecondary educational opportunities as a "critical state interest" and that promoting and enhancing financial access to higher education serves a "legitimate public purpose." *See* § 1009.97(1), Fla. Stat. To foster timely financial planning for higher education, the State specified its intent to establish a prepaid program "through which many of the costs associated with postsecondary attendance may be paid in advance." *See* § 1009.97(2), Fla. Stat.

As part of the Board's limited authority to create prepaid plans, the State has obligated itself to make up for any shortfalls if the funds collected by the Board are insufficient to cover the obligations to beneficiaries. *See* § 1009.98(7), Fla. Stat.

---

[1] Plaintiffs contend the Board possesses "independent authority" to enter into, administer, and pay benefits under the Plaintiffs' contract. Init. Br. at 5. This ignores the express statutory and legal underpinnings of the Board's very existence. In short, Plaintiffs attempt to characterize it as a fact, but the assertion is wrong as matter of law.

2

("The state shall agree to meet the obligations of the board to qualified beneficiaries if moneys in the fund fail to offset the obligations of the board. The Legislature shall appropriate to the Florida Prepaid College Trust Fund the amount necessary to meet the obligations of the board to qualified beneficiaries.").

Over time, the Legislature has expanded the plans and programs that the Board may offer. Presently, the Legislature has authorized the Board to provide four prepaid plans that cover tuition and fees at Florida public universities and colleges:

1. Advance payment contracts for registration fees, intended to cover the "tuition fee, financial aid fee, building fee, and Capital Improvement Trust Fund fee." *See* § 1009.98(2)(b)1., § 1009.24(4)–(8), Fla. Stat. ("Tuition Plan);

2. Beginning, July 1, 1998, advance payment contracts which covers a variety of miscellaneous fees, such as student activity and service fees. *See* § 1009.98(2)(b)2., § 1009.24(9)–(24), Fla. Stat. ("Local Fee Plan");

3. Beginning, July 1, 2007, advance payment contracts which covers the Tuition Differential (TDF) authorized in s. 1009.24(16), Fla. Stat. *See* § 1009.98(2)(b)3, Fla. Stat.; §1009.01(3), Fla. Stat. ("TDF Plan"); and

4. Beginning July 1, 2009, advance payment contracts which would cover the costs covered in the Tuition Plan, the Local Fee Plan, and the TDF Plan.

In 2007, the Legislature granted certain universities the ability to impose a "supplemental fee" entitled "Tuition Differential." *See* Ch. 2007-225, § 2, Laws of

Fla. The Legislature defined "tuition differential" as "the supplemental fee charged to a student for instruction provided by a public university in this state pursuant to s. 1009.24(15)." *See* Ch. 2007-225, § 2, Laws of Fla. The Legislature also placed restrictions on how funds derived from the TDF must be spent, limiting them solely to be used "for improving the quality of direct undergraduate instruction and support services." *Id.* The definition of "tuition" was left unchanged. *Id.* (defined as "the *basic* fee charged to a student for instruction provided by a public postsecondary educational institution in this state. *A charge for any other purpose shall not be included within this fee.*") (emphasis added).

The same law creating the TDF also provided exemptions from the TDF. Most significantly, "[b]eneficiaries having prepaid tuition contracts pursuant to s. 1009.98(2)(b) which were in effect on July 1, 2007, and which remain in effect, are exempt from the payment of the tuition differential." *See* Ch. 2007-225, § 2, Laws of Fla.[2] Plaintiffs have remained continuously enrolled in their respective Tuition

---

[2] In addition to the exemption for beneficiaries who were continuously enrolled in prepaid plan contracts, the Legislature also created an exemption for any student "who was in attendance at the university before July 1, 2007, and who maintains continuous enrollment." Ch. 2007-225, § 2, Laws of Fla. The Legislature also subsequently granted the universities discretion to waive the TDF for students who meet the eligibility requirements for the Florida Public Student Assistance Grant Program. *See* § 1009.24(16)(b)7, Fla. Stat. In short, the TDF has never been universally charged to all students.

and Local Fee Plans. App.II, at 24-25, ¶¶ 54-55.[3]  As such, they are not obligated to

pay the TDF if they attend an in-state public university. Also concurrent with these

changes, the Legislature granted authority to the Board to offer advance payment

contracts to cover the TDF.[4] *See* Ch. 2007-225, § 3, Laws of Fla.

Plaintiff Andrea Darlow purchased a Tuition Plan for her daughter in 2004,

and her daughter began to attend an out-of-state university in 2021. App.II, at 24,

¶54. Plaintiff Erica Lavina purchased a Tuition and Local Fee plan for her daughter

in 2006, and her daughter was slated to attend a non-public university, beginning

Fall, 2024. *Id.* at 25, ¶55. Plaintiffs have asserted they are being denied the value of

the TDF—approximately $44.17 per credit hour—and such actions constitute

impairment of their contracts and a taking in violation of the Unites States

Constitution. App.II, at 25, 56. They attribute this denial of claimed rights

collectively to the Board and its executive director, and not to any particular

---

[3] Appellees accept the Appellants' Appendix. Citations to the Appendix are indicated by "App.XX, at YY, ¶ ZZ," where "XX" refers to the Appendix Volume; "YY" refers to the specific page in the Appendix Volume; and where appropriate, "ZZ" refers the specific paragraph.

[4] TDF Plans specifically cover the tuition differential authorized in section 1009.24(16), Fla. Stat. *See* § 1009.98(2)(b)3. TDF Plans were sold in conjunction with Tuition and Local Fee Plans. As Tuition Plans entered into prior to July 1, 2007, were exempt by statute, TDF Plans were not available to purchase as add-on Plans. Nevertheless, customers could cancel their Tuition Plan at any time and for any reason. Assuming eligibility requirements were met, a parent could have purchased new prepaid plans that included TDF coverage that would be paid to in-state public schools and would be eligible for transfer to a Florida private or out of state school.

individual. *See e.g*., App.II, at 8-9, 10, 24-25, 31, and 34-35. Plaintiffs do not seek to enjoin any specific member of the Board or the executive director from any specific activity. Instead, Plaintiffs' request to collectively have the "*Board Members' and the Board ED's continuing interpretation and application*' to Plaintiffs' contracts declared to be violation of the Contracts Clause and the Takings Clause of the United States Constitution, and that they be collectively enjoined from future violations. App.II, at 34-35.

The statutory definition of tuition has never changed and has never been defined to include the TDF. *See* § 1009.01, Fla. Stat. Specific to Plaintiffs, the administration of the Master Contract is identical before and after enactment of the TDF—Plaintiffs are entitled to receive the same amount that would be paid to an in-state public university they were attending. What the Board has consistently done is administer the Master Contracts in conformance with the legal requirements of Florida Statutes.

The Board is authorized to provide "prepaid registration fees for a specified number of undergraduate semester credit hours not to exceed the average number of hours required for the conference of a baccalaureate degree" for the Tuition Plan. § 1009.98(2)(b)1, Fla. Stat. A similar provision authorized the Board to provide prepaid plans for additional fees—the local fees—described in section 1009.24(9)-

6

(12), Florida Statutes, for the Local Fee Plan. § 1009.98(2)(b)2, Fla. Stat. The Tuition Differential is not included as a component of any of these fees.

The Master Covenant in 2006[5] provided a purchaser of a Tuition Plan "prepays 120 semester credit hours of tuition at a state university through the purchase of a four-year university tuition plan." App.II, at 58. The Master Contract defined "registration fee" to include "the fee charged for tuition and includes the matriculation fee, financial aid fee, building fee, and Capital Improvement Trust Fund fee."[6] *Id*. at 57. The purchaser of a Local Fee Plan "prepays 120 semester credit hours of local fees at a state university through the purchase of a four-year university local fee plan." *Id.* at 58. The Master Contract defined Local Fees as "the activity and service, health, and athletic, fees charged by state universities." *Id*. at 57.

---

[5] The Master Contract has been amended several times over the years, but the relevant provisions at issue in this litigation have not materially changed, apart from the addition of specific statutory citations for the various fees. *See* Fla. Admin Code R. 19B-4.001(2) (adopting the Master Contract); *see also* Master Contract, §§ 1.09, 1.31, and effective Aug. 2024. It is the Board's position that the latest version of the Master Contract controls the relationship between the parties. *See Snyder v. Florida Prepaid College Board*, 269 So.3d 586 (2019).

[6] The definition of "registration fees" in the Master Contract has been modified over the years to conform to the statutory changes related to the modification and consolidation of fees. For example, in 2012 the Legislature consolidated the building fee and the Capital Improvement Trust Fund Fee into a single fee. *See* Ch. 2012-134, § 22, Laws of Fla. The definitions in Florida Statutes and the Master Contract have never associated the TDF with tuition or local fees. From its legislative origin, the TDF has always been a unique discretionary charge. *See* § 1009.01, Fla. Stat.; § 1009.24(5) and (16), Fla. Stat.

The 2006 Master Contract does not speak to the TDF because it did not exist at the time, but after the Legislature created the TDF, the Master Contract was ultimately amended to reflect the statutory revision. Presently, TDF means "the fee charged by a State University pursuant to Section 1009.24(16), Florida Statutes. *See* Fla. Admin. Code R. 19B4.001(2) (adopting The Florida Prepaid College Plan Master Contract, Form No. FPCB 2025-02).

In return for their purchase of a Tuition or Local Fee Plan, for those individuals like Plaintiffs who attend an or private or out-of-state colleges and universities, the Board "will transfer an amount not to exceed the current rates at state universities and community colleges in Florida." App.II, at 59. The creation of the TDF has not changed a single term of Plaintiffs' original agreement with respect to tuition and benefits.[7] The coverage and value of Plaintiffs' Tuition and Local Fee Plans now are identical to when they first entered into the Master Contract. A university tuition credit hour purchased under a Tuition Plan and a local fee credit hour purchased under a Local Fee Plan is functionally worth the same. This is because the Board would pay the same amount to a private or out-of-state institution

---

[7] Throughout their brief, Plaintiffs assert that the Board adopted administrative procedures and changed the contract, yet nowhere do they ever detail those changes. As is evident, the Board never materially changed any term of the Master Contracts to address the TDF exemption for existing contracts. All the Board did was keep the Master Contracts consistent with the statutory changes made by the Legislature.

that would be charged to the student if the student was attending a public state university, without regard to whether the plan was purchased in 2004, 2006, or 2025.

Plaintiffs do not just seek to enjoin the Board's interpretation of their contracts. They also seek to side-step the First District Court of Appeal's decision in *Snyder v. Florida Prepaid College Board*, 269 So. 3d 586 (Fla. 2019), which the Board is bound to follow. App.II, at 23, ¶ 50. Applying Florida contract law and interpreting the Master Contract, the First District Court of Appeal held that a plan beneficiary who had been consistently enrolled in a Tuition Plan prior to 2007 had no right to receive the value of the TDF, because if they had attended a public university in Florida, they would not have been obligated to pay the TDF. *Snyder*, 269 So. 3d at 595. The plaintiff in *Snyder* presented similar theories, arguing she was contractually entitled to the value of the TDF based on the Board's "essential commitment" to cover the cost of a college education, as reflected in meeting minutes, transcripts, and promotional flyers. *Id.* The *Snyder* court rejected these claims, holding that nothing in the contract or Florida law supported Snyder's interpretation, noting that would produce an absurd result. *Id.*

Plaintiffs filed their initial class action complaint against the Board, its individual members, and its executive members on January 2, 2024. App.I, at 17-46. Plaintiffs subsequently filed an Amended Class Action Complaint ("Complaint"), dropping the Board as a defendant and asserting claims for impairment of contract

9

under the Contract Clause of the United States Constitution, and a taking under the Fifth and Fourteenth Amendments of the United States Constitution. App.II, at 6-37.

Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). App.II, at 215-233. Among the defenses asserted, Defendants argued that Plaintiffs claims, while couched as merely seeking injunctive relief, were truly claims for monetary relief barred by sovereign immunity under the Eleventh Amendment. App.II, at 220-225. Accordingly, Defendants argued that the Court lacked subject matter jurisdiction to hear Plaintiffs' claims. *Id.* Defendants also argued that changes in law which became effective July 1, 2007—changes in law which the Board was obligated to follow—were the cause of Plaintiffs' claimed injuries, not the Board's administrative decisions. App.II, at 225-226. With Plaintiffs' claims subject to a four-year statute of limitations, Plaintiffs should have asserted their claims on or before July 1, 2011. *Id.* Plaintiffs' claims were over twelve years too late. *Id.* Finally, Defendants argued that Plaintiffs failed to state a claim for either impairment of contract or a taking because Plaintiffs did not possess the claimed contractual or property rights. App.II, at 227-229. *Snyder* plainly found that similarly situated plaintiffs do not have a contractual right to the TDF. *Id.* Accordingly, with no right to the TDF, there could be no violation of Plaintiffs' constitutional rights. *Id.*

10

The district court judge referred Defendants' Motion to Dismiss to a magistrate judge for a report and recommendation. After a hearing, the magistrate judge issued a report and recommendation that Defendants' motion be denied, finding that Plaintiffs alleged an ongoing violation of federal law and sought only prospective relief. App.III, at 37-59. Although the relief requested could have future financial effects, the magistrate judge concluded the *Ex parte Young* exception for money damages did not bar Plaintiffs' claims at the motion to dismiss stage. App.III, at 48. As to the statute of limitations argument, the magistrate judge reported that Plaintiffs had asserted "as-applied" challenges, and if proven, their claims asserting ongoing constitutional violations of their constitutional rights would not be time-barred, and should not be dismissed. App.III, at 50. Similarly as to the failure to state a claim, the magistrate judge found that Plaintiffs had plead claims sufficiently that the Complaint should proceed at the motion to dismiss stage. App.III, at 58.

Defendants timely objected to the magistrate judge's report and recommendation, arguing that Plaintiffs' claims were not simply for injunctive relief under *Ex parte Young* but instead sought prospective monetary damages. App.III, at 63-68. Therefore, Plaintiffs claims were barred by sovereign immunity and the Eleventh Amendment under *Seminole Tribe of Florida v. Florida Department of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014). *Id.* Defendants further argued the magistrate judge erred in recommending the Plaintiffs "as-applied" challenge should

11

survive the motion to dismiss without a developed factual record. App.III, at 69-70. Defendants emphasized that the Board's actions faithfully followed the statutory framework, which created a TDF but excluded it from the definition of tuition. *Id.* Moreover, it was the statute that was the root of Plaintiffs' grievances, not Defendants' administration of the contracts. *Id.* Defendants also argued the magistrate judge failed to give proper consideration to *Snyder,* and incorrectly recommended that Plaintiffs had properly stated claims for impairment of contract and a taking. App.III, at 70-75. Defendants also objected that the magistrate's report did not properly consider the legal requirements for Plaintiffs' constitutional claims for impairment of contract and a taking, as there were defects in Plaintiffs' allegations that could be decided as a matters of law. App.III, at 75-77

Upon this record, the district court conducted a *de novo* review and overruled the magistrate judge's report and recommendation, dismissing the Complaint with prejudice. App.III, at 99-115. The district judge found that the relief Plaintiffs requested was similar to that presented in *Seminole Tribe of Florida*, that the relief requested was synonymous to a refund to be paid by the State, which was precluded by the Eleventh Amendment. App.III, at 106-10. The district court further found that Plaintiffs' claims arose out of the statutory changes that went into effect on July 1, 2007. *Id.* at 110-15. Based upon the terms of the Master Contract, Plaintiffs were on notice of the impact of changes in law on their contracts. *Id.* The district court found

that when the Florida Legislature passed the law enacting the TDF, Plaintiffs knew or should have known they were injured. *Id.* at 112. Plaintiffs' claims did not stem from the Board's continuing administration of the contracts, but from the statute that created the TDF exemption. *Id.* As a result, Plaintiffs claims were time-barred. *Id.* at 114-16. The district court did not address Defendants legal arguments asserting that Plaintiffs failed to state a claim. Accordingly, the district court dismissed the complaint with prejudice.

This appeal ensued.

## STANDARD OF REVIEW

The granting or denial of a sovereign immunity defense is an issue of law subject to de novo review by this court. *Seminole Tribe of Florida v. State of Fla.*, 11 F.3d 1016 (11th Cir. 1994); *McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563, 1564 (11th Cir. 1987).

## SUMMARY OF ARGUMENT

Put simply, this case concerns Plaintiffs seeking monetary damages for a benefit they were never entitled to. But even if they were, the Eleventh Amendment bars suits against states by citizens of other states or foreign citizens. U.S. Const. amend. XI. Moreover, the Board did not waive its immunity for these claims and is entitled to Eleventh Amendment immunity, as well as the State of Florida's inherent sovereign immunity under the United States Constitution.

13

Plaintiffs attempt to cloak breach of contract claims that were rejected in *Snyder* as constitutional violations by the Board's members and executive director and request injunctive relief. Yet, similar to the plaintiffs in *Seminole Tribe of Fla. v. Fla. Dep't. of Revenue*, 750 F.3d 1238 (11th Cir. 2014), no exception to *the Ex parte Young* doctrine applies, because the Plaintiffs ultimately seek the payment of money by the State of Florida. Thus, the district court aptly found that because the Plaintiffs are seeking money damages rather than genuine prospective relief, the *Ex parte Young* exception does not apply and these claims are barred by sovereign immunity. Indeed, instead of seeking equitable relief, the Plaintiffs are trying to compel payment that they are not entitled to. Furthermore, *Snyder* has established that Plaintiffs have no property interest in the value of the TDF under their contracts.

Plaintiffs have no legitimate claim under the Contracts Clause or the Taking Clause of the United States Constitution. First, Plaintiffs cannot claim any right to payment of the value of the TDF. As expressly stated in *Snyder*, plans like theirs unambiguously excluded that benefit. Nevertheless, they now seek to recover its value—despite not having paid for it or ever being entitled to it, even if they had attended a public state university or college in Florida. Second, there can be no protected property interest in something they have no right to in the first instance.

Ultimately, Plaintiffs' claims are also time-barred. The law from which they assert their injuries arise went into effect on July 1, 2007, after the Plaintiffs

purchased their Tuition Plans. At that time, Plaintiffs were placed on notice of the new statutory framework the Legislature created, yet they continued with their plan for over a decade longer. And while Plaintiffs assert that they did not know that they would be subject to the TDF framework, they should have known based upon the plain language of their contract. Accordingly, the statute of limitations began running in 2007, yet Plaintiffs delayed filing their claims until 2024, long after the statute of limitations has expired.

For these reasons, this Court should affirm the district court's dismissal of the case with prejudice.

## ARGUMENT

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has long been understood that states have retained their sovereign immunity from private suit in federal courts. *Va. Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."); *see also Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013) ("Importantly, the Eleventh Amendment is neither a source of nor a limitation on states' sovereign immunity from suit. Rather, it is a recognition

15

of states' sovereign immunity in federal court."). The rule is straightforward: "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State. *Stewart*, 563 U.S. at 254.

No party disputes that Florida Prepaid College Board is an agency of the state and has not waived its immunity from suit in federal court. The only issue is whether Plaintiffs' claims fall within the narrow exception provided for in *Ex parte Young*. Under the *Ex parte Young* doctrine, an exception to the general rule of state immunity from suit in federal court exists where a plaintiff seeks prospective equitable relief to stop continuing violations of federal law. *Ex parte Young*, 209 U.S. 123 (1908); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

State sovereign immunity is a threshold issue that should be decided before requiring a state or its officers to answer a federal complaint against them. *Seminole Tribe of Florida v. Florida Dept. of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014). The district court correctly addressed the issue when it found that Defendants were entitled to sovereign immunity from Plaintiffs' claims and dismissed their complaint with prejudice.

## I.    THE TRIAL COURT CORRECTLY FOUND THAT THE EX PARTE YOUNG EXCEPTION DOES NOT APPLY.

Money is at the core of Plaintiffs' claims. They demand contractual benefits—in the form of payments—which they contend are being wrongfully withheld.

16

Plaintiffs assert they are only seeking to prospectively enjoin the continuing violation of their contractual and property rights (which, as explained in greater detail below, they do not possess). But this formulaic label, which is designed to cloak a breach-of-contract claim with federal jurisdiction, cannot control over the necessary and intentional outcome of the injunction they seek: monetary payments by the Board. Plaintiffs' requested injunction serves literally no other purpose than financial compensation.

As the district court correctly noted, the present case is most similar to *Seminole Tribe of Florida v. Florida Department of Revenue*, 750 F.3d 1238 (11th Cir. 2014). There, the Seminole Tribe sought injunctive relief against the director of the Florida Department of Revenue, requesting that he be barred from denying both past and future fuel tax refund claims. *Id*. at 1241. This Court rejected the Seminole Tribe's requests on two main grounds. First, it found that the Florida Department of Revenue—not the director—was the "real, substantial party in interest" because the relief sought was "to be financed by the Florida fisc." *Id*. at 1243-44. The Court observed that when an individual public officer is named, "we must ask whether the suit is 'in essence one for the recovery of money from the state.'" *Id*. at 1243 (quoting *Ford Motor Co. v. Dep't of Treasury of Ind*., 323 U.S. 459, 464 (1945), *overruled in part, Lapides v. Bd. of Regents*, 535 U.S. 613, 622–23 (2002)). Likewise, here, Plaintiffs seek relief—enjoining the Board's current interpretation and

17

administration of the contracts and future payment of the value of the TDF—from the Board, a state agency, and not specifically against its individual members and executive director.

Second, the *Seminole Tribe* Court found that the Tribe's request for equitable relief seeking future payments was equitable in name only. The Tribe was not seeking to enjoin violations of federal law but was seeking future refunds. There, a judgment enjoining the Department and its director from "'continued and prospective refusal to refund the Fuel Tax,' . . . would amount to a money judgment against Florida." *Id,* at 1245. Finding that sovereign immunity barred the Tribe's claims, this Court reasoned:

> We cannot declare the Tribe exempt from the fuel tax, nor can we enjoin the Department and its individual officer to pay the Tribe a refund. Granting either form of relief would be tantamount to a judgment that Florida must pay the Tribe cash from state coffers. State sovereign immunity forecloses that relief.

*Id.* Just like *Seminole Tribe*, the prospective relief requested here will require the payment of money by the State of Florida. *See Seminole Tribe of Fla.*, 750 F.3d at 1244-45 ("Prospective relief will not overcome the sovereign immunity of a state when that relief is an award of money damages camouflaged as an injunction or a declaratory judgment."); *see also* § 1009.98(7), Fla. Stat. (obligating the State to meet the obligations of the Board if there is a shortage of funds). Plaintiffs' request for injunctive relief is not equitable relief at all. It is simply a ruse to compel the

Board to pay Plaintiffs for the value of the TDF—a fee which they never would be obligated to pay, and a prepaid plan for which they never purchased.[8] In the present case, the expenditure of state funds is not "a necessary result of compliance with an injunction but is the 'goal in itself.'" *Seminole Tribe*, 750 F.3d at 1246–47 (citing *Luckey v. Harris*, 860 F.2d 1012, 1014–15 (11th Cir. 1988)).

Plaintiffs inaccurately represent that Supreme Court and Eleventh Circuit precedent vindicates their request for relief. Init. Br. at 22-25. But their argument conflates cases with federal claims legitimately ground in federal law—none of which involve claims under the Contracts Clause where a state court has already determined such contractual rights do not exist—with the contract-based claims in this case, which mirror those rejected in *Snyder*.

For example, *Edelman v. Jordan*, 415 U.S. 651 (1974) and *Quern v. Jordan*, 440 U.S. 332 (1979), involved the administration of federal-state programs, yet both held that monetary relief was barred because Congress had not abrogated Illinois's Eleventh Amendment immunity. *Edelman* expressly rejected the concept of equitable restitution:

---

[8] Plaintiffs, as continuously enrolled plan participants, would never have been obligated to pay the TDF if they attended an in-state public university. If they truly desired the value of the TDF as a benefit, they could have terminated their existing plans and re-enrolled in plans that would have included the value of the TDF. Their failure to do so makes perfect sense; however, since Plaintiffs would never be required to pay the TDF in the first place.

> We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature.

*Edelman*, 415 U.S. at 666. Likewise, the injunctive relief in *Quern* was simply to provide a notice to class members informing them "that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue." *Quern*, 440 U.S. at 349. The injunctions at issue in those cases did not direct the expenditure of funds, much less the expenditure of funds made directly to and for the benefit of the plaintiffs.

Similarly, *Milliken v. Bradley*, 433 U.S. 267 (1977), involved remedial injunctive relief addressing de jure segregation that violated the guarantees of the Fourteenth Amendment, which was the source of the federal right. The Supreme Court found this relief permissible because it compelled state officials to conform their conduct to the requirements of federal law—specifically, reversing the racial segregation that had been instituted through Jim Crow laws and declared unconstitutional in *Brown v. Board of Education*, 347 U.S. 483 (1954)—notwithstanding a direct and substantial impact on the state treasury. Plaintiffs' claims are not race-based claims recognized as violative of the Fourteenth Amendment, and the monetary relief is not incidental to reversing de jure racial

20

segregation and ensuring the protections of the Fourteenth Amendment. Their claimed relief is ultimately for the payment of the value of the TDF itself. As discussed further below, the contours of their claims are determined by state law, all of which were resolved in *Snyder*.

Likewise, in *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, the Court found the *Ex parte Young* exception to apply where the relief sought was to enjoin continuing violations of the Telecommunications Act of 1996, a federal law creating a new telecommunications regime designed to foster competition in local telephone markets. 535 U.S. 635, 645–46 (2002). Here, Plaintiffs claim "they are seeking to have state officials interpret and enforce their future contractual benefits in a manner consistent with the Constitution," Init. Br. at 28, but the United States Constitution does not govern the interpretation of their contracts—state law does. *Volt Info. Scis., Inc. v. Bd. of Tr's of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) ("[T]he interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review."); *Eli Lilly & Co. v. Air Express Int'l USA, Inc.*, 615 F.3d 1305, 1314 (11th Cir. 2010) ("The interpretation of private contracts is ordinarily a question of state law."). And Florida law is clear: Plaintiffs have no contractual right to the benefits they seek. *Snyder v. Fla. Prepaid College Bd.*, 269 So. 3d 586, 592–93 (Fla. 1st DCA 2019).

21

The only case Plaintiffs cite for this proposition which involves the *Ex parte Young* exception and a takings claim is *Maron v. Chief Financial Officer of Florida*, 136 F.4th 1322, 1333–34 (11th Cir. 2025). *Maron* involved a putative class action against Florida's Chief Financial Officer challenging a state law under the Fifth Amendment's Takings Clause. This Court, in analyzing the standing issue, "assume[d] for purposes of standing that the Marons had a 'legally protected interest'" in their claimed refund. *Id*. at 1329. Here, no such assumption is necessary. Plaintiffs have no property interest in the value of the TDF under their contracts, as this issue was already settled in *Snyder*. Plaintiffs possess no such right or entitlement as a matter of law.

Plaintiffs overstate the reach of the district court's opinion below. The district court's ruling does not dimmish the scope of the *Ex parte Young* exception and would not insulate state actors from judicial efforts to remedy constitutional violations at all. *See* Init. Br. at 29-31. The cases cited by Plaintiffs claiming federal courts routinely vindicate such rights are easily distinguishable from the claims Plaintiffs seek to revive in this Court. *Ex parte Young*, 209 U.S. 123 (1908), involved a challenge to a statute that would have fixed a schedule of railroad rates or face criminal prosecution does not resemble Plaintiffs claims. Similarly, *Lipscomb v. Columbus Municipal Separate School District*, 269 F.3d 494 (5th Cir. 2001), dealt with a state constitutional amendment that prohibited donation of state lands to

private parties and would have had the effect of voiding Lipscomb's leases that included nominal rent payments. Here, Plaintiffs do not challenge a statute or constitutional provision, they do not face criminal prosecution, and their Master Contract expressly incorporates Florida Statutes and contemplates the possibility of future legislative changes; and the material terms of their contract have already been construed adversely to their position in *Snyder*. App.II, at 57 (providing that Chapter 1009, Florida Statutes, and section 529 of the Internal Revenue Code, "as amended from time to time," apply to the Master Contract and are incorporated by reference.).

Plaintiffs also cite *Pharmaceutical Research and Manufacturers of America. v. Williams*, 64 F.4th 932 (8th Cir. 2023) and *Rossborough Manufacturing Company v. Trimble*, 301 F.3d 482 (6th Cir. 2002) as supportive, but those cases are also distinguishable. In *Pharmaceutical Research*, the Eighth Circuit entertained a Takings Clause challenge to a Minnesota inverse condemnation statute that was alleged to be inadequate where plaintiffs were required to give away free insulin without compensation, and every donation of insulin would have resulted in a multiplicity of suits. The issue decided was whether Minnesota's statute was adequate to address the vindication of plaintiffs' undisputed property rights. *Id.* at 942-45. Again, Plaintiffs are not challenging a statute, and a state court has already determined they do not possess the rights in their Master Contract they claim. *See Snyder*, 269 So. 3d at 595-96.

A close reading of *Rossborough Manufacturing* actually supports the arguments advanced by Defendants, particularly as they relate to Section II, infra. That case involved a complaint asserting claims under the Contracts Clause, the Takings Clause, and the Due Process Clause, which the district court dismissed on for lack of subject matter jurisdiction on Eleventh Amendment Immunity grounds and for failure to state a claim. *Rossborough Mfg. Co.*, 301 F.3d at 484-85. While the Sixth Circuit concluded that plaintiffs' implicit demand for reimbursement of money was not barred by the *Ex parte Young* exception—a position that is plainly at odds with this Court's holding in *Seminole Tribe*—the court nevertheless upheld the district court's dismissal based upon the failure to state a claim. *Id.* The claims in that case were based upon a statute that was previously declared unconstitutional by Ohio's Supreme Court, which had the effect of nullifying plaintiffs' claims. *Id.* at 485-87. The Sixth Circuit reasoned that the Contracts Clause protects against legislation, not judicial decisions; that the invalidation of the statute nullified plaintiffs claim *ab initio*; and therefore, that the plaintiffs did not possess the contractual rights that they claimed. *Id.* at 490-91. Going further, the court similarly concluded the plaintiffs also did not possess the property rights they claimed because the source of their claimed property rights was the same invalidated statute. *Id.* Without the appropriate grounding in state law, plaintiffs' federal claims for impairment of contract and takings failed. *Id.* As Defendants argue below, the

sources of Plaintiffs' contractual and property rights are grounded in state law. *Snyder* held that plan participants like Plaintiffs do not possess an interest in the value of the TDF, and as such, their claims must also fail. Accordingly, *Rossborough Manufacturing* provides no support for Plaintiffs' position.

Despite Plaintiffs' contentions, a decision upholding the district court's dismissal does not open Pandora's box or extend a state's immunity protections any further than what has already been recognized in *Seminole Tribe*. Ongoing violations of federal law are still redressable through injunctive relief. Instead, Plaintiffs' trojan-horse approach is to disguise its state law breach of contract claims—claims that counsel pursued and lost in *Snyder*—as federal impairment of contract and takings claims. In so doing, Plaintiffs invite this Court to commence a whole new canon of jurisprudence of federal law on contract interpretation that would override what is traditionally left to state courts. The end result would be an increase in federal litigation second guessing state courts' interpretations of contracts and potentially interjecting additional federally-created contractual obligations on state agencies not contemplated under state law any time a party loses a breach of contract claim involving a state agency. This Court should decline that invitation.

## II. PLAINTIFFS FAIL TO STATE A CONSTITUTIONAL CLAIM FOR IMPAIRMENT OF CONTRACT OR TAKINGS BECAUSE THEY HAVE NO SUCH RIGHTS.

Plaintiffs attempt to cloak their claims under the rubric of claiming impairment of federal contractual rights and a taking of their property rights, but

Plaintiffs have no such rights in the value of the TDF as a benefit under their contracts. Whatever rights Plaintiffs claim—whether in contract under a Contract Clause claim or in property under a takings claim—are determined by state law. And *Snyder* decided that issue conclusively against Plaintiffs' position.

### a. Plaintiffs can make no claim under the Contracts Clause.

The Contract Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art I, § 10, cl. 1. To show an impairment of contract, a court must determine whether the state law at issue "operated as a substantial impairment of a contractual relationship." *Taylor v. City of Gadsden*, 767 F.3d 1124 (2014) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). To meet this requirement, Plaintiffs must demonstrate that (1) there is a contractual relationship, and (2) the contractual relationship is being impaired by the law in question. But Plaintiffs here do not challenge the statutes that created the TDF—they expressly only challenge the Board's actions in carrying out their statutory duties, but not the statutes. Absent a challenge to the statutes that created the TDF, Plaintiffs cannot demonstrate their claimed contractual benefits are impaired for the purposes of a Contract Clause violation. *See Taylor v. City of Gadsden*, 767 F.3d 1124, 1132 (11th Cir. 2014) (without a challenge to a law, "plaintiffs have no basis upon which to launch a Contract Clause challenge in the first instance."); *see also New Orleans Waterworks Co. v. Louisiana Sugar-Ref. Co.*,

125 U.S. 18, 30 (1888) ("This court, therefore, has no jurisdiction to review a judgment of the highest court of a state, on the ground that the obligation of a contract has been impaired, unless some legislative act of the state has been upheld by the judgment sought to be reviewed."). Here just as in *Snyder*, Plaintiffs did not challenge the statutes, but challenged the Board's administration of the contracts. Accordingly, their claim for impairment of contract under the Contract Clause fails for want of a challenge to a law.

Nevertheless, even assuming Plaintiffs have presented a proper challenge to a law, they still are unable to demonstrate that any right to the value of the TDF has been impaired. The interpretation of contracts is generally a matter of state law, and federal courts are not the final word on state law—state courts are. *See DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015) ("[I]nterpretation of a contract is ordinarily a matter of state law to which we defer . . . ."); *see also Claussen v. Aetna Cas. & Sur. Co.*, 865 F.2d 1217, 1217 (11th Cir. 1989), certified question answered, 259 Ga. 333 (1989) (stating that interpretation of an insurance contract provision was "peculiarly a question of state law . . . ."); *Peoples v. Sec'y, Dep't of Corr.*, 8:18-CV-1618-WFJ-AAS, 2023 WL 4947939, at *26 (M.D. Fla. Aug. 3, 2023), *appeal dismissed sub nom. Peoples v. Sec'y, Florida Dep't of Corr.*, 23-13008-B, 2024 WL 1070535 (11th Cir. Feb. 1, 2024) ("The state court's interpretation of state law is afforded deference.").

27

The First District Court squarely addressed the issue of contractual rights to the value of TDF for plan participants like Plaintiffs. *Snyder*, 269 So. 3d at 592-94. The court first observed that plan participants like Plaintiffs were subject to the latest version of the contract, not the version they initially executed. *Id.* at 591-92. Here, Plaintiffs' original contract expressly provided:

> The applicable provisions of part IV, Chapter 1009, Florida Statutes, rules contained in Chapters 19B-4 through 19B-13 and Rule Chapter 19B-15, Florida Administrative Code, and s. 529 of the Internal Revenue Code, as amended from time to time, shall apply to the contract and are incorporated by reference.

That provision has not materially changed at all. The *Snyder* court and the district court both noted that plan participants were on notice that their prepaid plans were the subject of a statutory and regulatory framework.

Next, the *Snyder* Court expressly concluded plans like the Plaintiffs unambiguously did not include the value of the TDF. The court found that the provision obligating the Board to "transfer an amount not to exceed the current rates at state universities and community colleges in Florida is not a separate benefit, but is the same benefit the beneficiary would have received at an in-state institution." Calling the same interpretation advocated by Plaintiffs in this case "absurd," the First District noted that such an interpretation would result in a windfall for students who leave Florida for their education. *Id.* at 593-94. The same reasoning applies here.

As a matter of settled state law, Plaintiffs do not have a right to the value of the TDF when they attend a non-public or out-of-state university or college. What they request this Court to do is entertain the theory that they do have a right to payment of the value of the TDF—a benefit which they have not paid for and the value of which they would not be entitled to if they attended a public state university or college. To do that, this Court must set aside *Snyder*, and jettison the traditional principles of comity and interpretations of contracts that show deference to state court determinations. Instead, this Court should adhere to established precedent and give proper deference to the holding in *Snyder*.

### b. Plaintiffs can make no claim under the Takings Clause.

Plaintiffs' Takings Clause claims suffer from substantially the same deficiencies as their Contract Clause claims. As a starting point, Plaintiffs appear to assert that the Board is making a regulatory taking of their property interest in the value of the TDF benefit. "[T]o state a Takings claim under either federal or [state] law, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected." *Givens v. Alabama Dept of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004). "The Takings Clause protects private property; it does not create it." *Id*. Here, Plaintiffs assert a protected property interest in the value of the TDF in the most cursory manner—notwithstanding *Snyder*'s conclusion that they have no contractual right to such benefits—but cite no authority to support such a

proposition. It is insufficient to simply claim such a right under the Fifth Amendment.

"Property interests, for the purposes of a takings claim, are not created by the Constitution, rather they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law." *Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F.3d 908, 917 (11th Cir. 2018); *see also Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) ("the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law."). Since Plaintiffs' property interests are defined by state law, *Snyder* has answered the question of whether Plaintiffs have an entitlement to the value of the TDF. The answer is unequivocally no. At bottom, Plaintiffs' claims are reformulated state law breach of contract claims masquerading as constitutional claims. *See Hutcherson v. Smith*, 908 F.2d 243, 246 (7th Cir. 1990) ("Hutcherson's claim here is but a state law tort claim of attorney malpractice masquerading as a constitutional tort."); *see also Washington v. Washington*, No. 4:15CV114-RH/CAS, 2016 WL 3351019, at *1 (N.D. Fla. June 14, 2016) ("This is a state-law property dispute masquerading as a constitutional claim."). Even if Plaintiffs fall within the *Ex parte Young* exception, they have no property right to the TDF that they claim.

## III.    PLAINTIFFS' CLAIMS ARE TIME-BARRED.

The district court correctly concluded that Plaintiffs' claims are time-barred by the statute of limitations. Plaintiffs seek to circumvent the application of the statute of limitations in two ways. First, they have eschewed a challenge to the statute (even though a statutory challenge was necessary for their claim under the Contract Clause). Second, they have attempted to characterize their claims as an "as-applied" challenge to the Board's "independent" interpretation in denying their claims for the value of the TDF. Their efforts were rightly rejected by the district court.

Plaintiffs correctly note that the statute of limitations for their claims is four years. *See* § 95.11, Fla. Stat.; *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1303 (11th Cir. 2022); *Baker v. Gulf & Western Indus.*, 850 F.2d 1480, 1481 (11th Cir. 1988). Defendants also generally do not dispute that Plaintiffs claims accrued when they were injured. *See Doe*, 51 F.4th at 1303 ("The statute of limitations begins to run when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"). What Plaintiffs get wrong is when their injury occurred.

Even assuming Plaintiffs had the rights they claim, their alleged injury stems not from the Board's interpretation or application of the TDF law, which has consistently followed the statutory directive issued in 2007. Plaintiffs' alleged injury stems from the law itself. The law creating the TDF went into effect on July 1, 2007,

after Plaintiffs purchased their Prepaid Plans. Ch. 2007-225, § 4, Laws of Fla. The Legislature's authorization of fees beyond tuition and local fees for state universities was already a known feature of the higher educational framework. The Board's offerings, including the Tuition Plan and the Local Fee Plan, reflected that structure. However, when the Legislature created the TDF, exempted individuals like Plaintiffs from ever having to pay the TDF fee, and authorized the Board to offer a TDF Plan, Plaintiffs were placed on notice of the TDF framework and that, absent a change in law, they would be subject to that new statutory framework. *See Snyder*, 269 So. 3d at 591 ("The language of the 03/04 MC preamble expressly placed Snyder on notice that her contract was subject to the statutory and regulatory framework at the time and "as amended from time to time.").

Plaintiffs claim that it is only the enforcement that causes their injuries; however, this ignores that Plaintiffs purchased, and did not cancel their plans, and the Board obviously held and administered those funds until the time to make payment under the Master Contract was imminent. Plaintiffs even expressly allege in the Complaint they were injured the moment the TDF was enacted: "the benefits of their Plans were significantly decreased by the State of Florida through a law enacted in 2007 by the Florida Legislature and adopted and enforced by the Prepaid Board under the auspices, direction, and control of its current and past Board Members, and the current and past Board ED." *See* App.II, at 7, ¶ 2. Plaintiffs

32

attempt to soften that allegation by asserting they did not know, but they should have known based upon the plain language of their contract.

Plaintiffs assert that the statute of limitations could not begin to run because, "[a]mong other things, in 2007 Plaintiffs would not have known whether their then-preschool-aged beneficiaries would choose to attend a Non-Florida State School." Plaintiffs' contention ignores that their contract specifically provided for that possibility and set the value that would be transferred as the same amount that would have been paid if the student had attended a state university. Plaintiffs' contention also ignores that the law authorized the Board to begin offering plans that covered the TDF the same year it was enacted. Such claims of ignorance simply ring hollow.

Finally, Plaintiffs attempt to characterize the Board's ongoing administration of the plans in conformance with the statute as a continuing violation doctrine ignores the legal reality of the Board's authority. Plaintiffs' bald assertions that the Board has independent authority to "provid[e] and pay[] benefits under [Plaintiffs'] Plan contracts, interpret[], apply[], and enforce their terms, and transfer[] the benefits of the Plans to Non- Florida State Schools" is wrong as a matter of law. Init. Br. at 5. In Florida, "administrative agencies are creatures of statute and have only such powers as statutes confer." *Florida Elections Comm'n v. Davis*, 44 So. 3d 1211, 1215 (Fla. 1st DCA 2010). The Board, and even its individual members and executive director, may only do what Florida Statutes authorize. The district court

correctly concluded that "Defendants' actions are mandated by the Florida Legislature and have been materially unchanged since 2007."

Plaintiffs should have known the prepaid plan structure would be altered when the Legislature enacted the TDF. In filing their claims in federal court in 2024, Plaintiffs were more than a decade too late.

## CONCLUSION

Accordingly, Defendants respectfully request the Court affirm the district court's dismissal of the case, finding Plaintiffs' claims are barred by sovereign immunity and the statute of limitations.

*/s/ George T. Levesque*
**George T. Levesque**
Florida Bar No.: 555541
Primary Email Address:
george.levesque@gray-robinson.com
Secondary Email Address:
rebecca.martin@gray-robinson.com
**Ashley Hoffman Lukis**
Florida Bar No.: 106391
Primary Email Address:
ashley.lukis@gray-robinson.com
**GRAY|ROBINSON, P.A.**
301 S. Bronough Street, Suite 600
Tallahassee, FL 32301
Phone: 850-577-9090
Fax: 850-577-3311
*Counsel for Appellees*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)**

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32 and Eleventh Circuit Local Rule 32-4. This brief contains 8,392 words.

*/s/ George T. Levesque*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 29th day of September, 2025, upon and all parties registered to receive notification via this Court's CM/ECF notification system.

/s/ George T. Levesque, Esq.