**No. 25-11267**

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

ERICA LAVINA and ANDREA DARLOW, individually and on behalf of all those similarly situated,

*Plaintiffs-Appellants*,

v.

JOHN D. ROOD, ET AL.,

*Defendants-Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-cv-60001-BB

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

**BERGER SINGERMAN LLP**
Mark S. Fistos, Esq.
Florida Bar No. 909191
201 East Las Olas Blvd.
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone: (954) 525-9900
mfistos@bergersingerman.com
rpendas@bergersingerman.com
drt@bergersingerman.com

*Attorneys for Plaintiffs-Appellants*

**HILGERS GRABEN PLLC**
Alec H. Schultz, Esq.
Florida Bar No.  35022
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 630-8304
aschultz@hilgersgraben.com

Jennifer M. Erickson Baak, Esq.
600 17th Street
Denver, CO 80202
Telephone: (773) 407-5502
jericksonbaak@hilgersgraben.com

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellants hereby state that the following individuals and entities have an interest in the outcome of this case:

Agustin, Mark

Bayliss, Slater

Berger Singerman, LLP

Bloom, Beth (The Honorable)

Darlow, Andrea

Fistos, Mark S.

GrayRobinson, PA

Hebda, Kathy

Hilgers Graben PLLC

Hunt, Patrick M. (The Honorable)

Lavina, Erica

Levesque, George T.

Lovett, Radford

Miller, Troy

Rood, John D.

i

Starkey, Adria D.

Schultz, Alec H.

Thompson, Kevin

Zebersky, Edward H.

Zimmerman, Jason A.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................i

ARGUMENT AND CITATIONS OF AUTHORITY ................................1

    I.   The District Court Erred In Finding Defendants Are Protected By Sovereign Immunity...........................................3

        A.   *Ex parte Young* Applies Even When Injunctions Have "Direct and Substantial Impacts on State Treasuries."..................................................................4

        B.   Defendants' Merits Arguments Are Not Relevant to Sovereign Immunity.................................................11

        C.   There Is No Basis for Treating Different Constitutional Claims Differently for Purposes of Sovereign Immunity. ................................................14

    II.   The District Court Erred in Finding Plaintiffs' Claims Time-Barred .................................................................17

        A.   Passage of the TDF Law Is Not Determinative for Statute of Limitations Purposes. .............................17

        B.   Plaintiffs Satisfy the Continuing Violation Doctrine..................................................................22

    III.   The Court Should Remand the Case to Allow the District Court to Consider the Merits. ................................24

CONCLUSION .....................................................................25

CERTIFICATE OF COMPLIANCE.......................................................27

CERTIFICATE OF SERVICE................................................................28

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bucklew v. Precythe*,
   587 U.S. 119 (2019)..................................................................18

*Disabled, Inc. v. Fort Lauderdale Hosp., Inc.*,
   826 F. Supp. 2d 1330 (S.D. Fla. 2011)...............................................12

*Doe v. Swearingen*,
   51 F.4th 1295 (11th Cir. 2022) ...................................................18, 22

*\* Edelman v. Jordan*,
   415 U.S. 651 (1974)............................................................. *passim*

*Elend v. Basham*,
   471 F.3d 1199 (11th Cir. 2006)........................................................22

*Ford Motor Co. v. Dep't of Treasury of Ind.*,
   323 U.S. 459 (1945).....................................................................10

*Gallardo v. Dudek*,
   963 F.3d 1167 (11th Cir. 2020)...................................................12, 16

*Harris v. Mexican Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009)...................................................18, 19

*Hooven & Allison Co. v. Evatt*,
   324 U.S. 652 (1945).....................................................................13

*Jeffrey S. v. State Bd. of Educ.*,
   896 F.2d 507 (11th Cir. 1990)........................................................25

*Karantsalis v. City of Miami Springs*,
   17 F.4th 1316 (11th Cir. 2021) ......................................................19

*Lipscomb v. Columbus Municipal Separate School District*,
   269 F.3d 494 (5th Cir. 2001)..................................................11, 14, 16

iv

*Luckey v. Harris*,
860 F.2d 1012 (11th Cir. 1988) ........................................................ 4

*Mamani v. Sánchez de Lozada Sánchez Bustamante*,
968 F.3d 1216 (11th Cir. 2020) ...................................................... 25

* *Maron v. Chief Fin. Officer of Fla.*,
136 F.4th 1322 (11th Cir. 2025) ............................................... *passim*

* *Milliken v. Bradley*,
433 U.S. 267 (1977) ................................................................. *passim*

*Pharm. Rsch. & Manufacturers of Am. v. Williams*,
64 F.4th 932 (8th Cir. 2023) ........................................................ 11

* *Quern v. Jordan*,
440 U.S. 332 (1979) ................................................................. *passim*

*Renfroe v. Nationstar Mortg., LLC*,
822 F. 3d 1241 (11th Cir. 2016) .................................................... 23

*Rossborough Mfg. Co. v. Trimble*,
301 F.3d 482 (6th Cir. 2002) ........................................................ 11

*Seminole Tribe of Florida v. Florida Dept. of Revenue*,
750 F.3d 1238 (11th Cir. 2014) .................................................... 8, 9

* *Snyder v. Fla. Prepaid Coll. Bd.*,
269 So. 3d 586 (Fla. Dist. Ct. App. 2019) ................................. *passim*

*Verizon Md. Inc. v. PSC*,
535 U.S. 635 (2002) ........................................................ 3, 11, 12, 24

*Wainberg v. Mellichamp*,
93 F.4th 1221 (11th Cir. 2024) ................................................. 17, 21

* *Ex parte Young*,
209 U.S. 123 (1908) ................................................................. *passim*

**Statutes**

28 U.S.C.S. § 636 ......................................................................... 25

Fla. Stat. §§ 1009.01(1), (3) (2007) ........................................................... 13

Fla. Stat. § 1009.24 (2007) ........................................................................ 13

Fla. Stat. § 1009.971(1) ............................................................................. 23

Fla. Stat. § 1009.971(4)(b), (d)&(x) ........................................................... 23

**Other Authorities**

3 Cyc. of Federal Proc. § 6:10 (3d ed.) ................................................. 12, 16

Fourteenth Amendment ............................................................................ 14

Cir. R. 28-1(h), (i), (l) ............................................................................... 24

* U.S. Const. amend. V ................................................................... *passim*

U.S. Const. amend. XIV ............................................................... 5, 10, 15

* U.S. Const. art. I, § 10, cl. 1 ....................................................... *passim*

## ARGUMENT AND CITATIONS OF AUTHORITY

As a hedge against the rising costs of college, the Florida Prepaid College Board marketed and sold Plans to families that allowed them to lock in the cost of tuition. But when the amount of those costs rose faster than the Board had anticipated, it got cold feet. Despite language in the Plan expressly providing that it would pay tuition, the Board unilaterally amended the Plan to place a newly-created Tuition Differential Fee (TDF) outside the scope of the benefits. The move was cynical in the extreme, the purpose of both "tuition" and the "tuition differential fee" is the same, to cover the cost of instruction. Plaintiffs – families who trusted the representations of the Prepaid Board – should be permitted to proceed with their lawsuit to enjoin the Board's current interpretation and application of the TDF law to their Plans.

First, the district court has jurisdiction to hear Plaintiffs' claims under the *Ex parte Young* exception to sovereign immunity. Both the Supreme Court and Eleventh Circuit have repeatedly held that plaintiffs may bring claims for prospective injunctive relief against state officials, even when the relief sought would have a direct and substantial effect on the state treasury. Defendants provide no on-point countervailing

authority, nor a principled basis on which to distinguish these cases. Instead, they seek to distract from the issue by focusing on the effect of a prior proceeding (involving wholly different plaintiffs) on the merits of the case. But here again the law is clear: merits arguments are not relevant to a determination of sovereign immunity.

Next, with regard to the statute of limitations, Defendants argue that Plaintiffs' claims accrued in 2007 with the passage of the TDF law. But while the passage of a law is determinative of the statute of limitations in the context of a "facial" challenge to the law, with an "as applied" challenge it is considered in the context of when the plaintiffs reasonably could have become aware of their injury. Here, because the TDF law is silent as to how it applies to the transfer benefit in Plaintiffs' Plans, Defendants cannot meet the high bar necessary to dismiss a complaint on statute of limitations grounds. Finally, Defendants' sole response to Plaintiffs' alternative argument that they have alleged a "continuing violation," is to assert Defendants have no discretion in how they administer Plan benefits. Defendants' argument here is contradicted by both the statutes creating the Board as well as the Board's actions unilaterally amending the Plans over the years.

2

Last, in Section II of their brief Defendants raise two arguments regarding the merits of Plaintiffs' claims, arguing that a state court decision in a different proceeding is determinative here. As an initial matter, it is unclear what significance Defendants ascribe to these arguments: they are not mentioned in Defendants' Statement of the Issues or Standard of Review; nor do Defendants' request the Court take any specific action based upon them. In any event, merits arguments are not relevant to sovereign immunity. And to the extent Defendants seek to have the Court rule directly on the merits, it is the general practice of the Eleventh Circuit not to take up issues not passed upon by the district court. There is no basis to deviate from that practice here.

### I.    The District Court Erred In Finding Defendants Are Protected By Sovereign Immunity.

Plaintiffs' asserted claims fall squarely within *Ex parte Young*: they allege an ongoing violation of federal law and seek prospective relief. *See* Doc. 15, Pg. 26 ¶ 78; *id.* at Pg. 28 ¶ 86; *id.* at Pgs. 30-31; *see also Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (setting forth two-part test). In addition, both the Supreme Court and Eleventh Circuit have repeatedly held that the *Ex parte Young* exception applies even when injunctions cause "direct and substantial impact on the state treasury." *Milliken v.*

*Bradley*, 433 U.S. 267, 289 (1977); *see also Edelman v. Jordan*, 415 U.S. 651, 664, 667-68 (1974); *Quern v. Jordan*, 440 U.S. 332, 347 (1979); *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1333-34 (11th Cir. 2025); *Luckey v. Harris*, 860 F.2d 1012, 1014 (11th Cir. 1988).

In response, Defendants argue that Plaintiffs' relief is not prospective because "the necessary and intentional outcome of the injunction they seek [is] monetary payments by the Board." Appellees' Br., Pg. 17. Defendants also seek to distinguish cases applying the *Ex parte Young* exception, arguing they do not apply here because 1) Plaintiffs' claims cannot succeed on the merits, and 2) those cases do not concern claims brought under the Contracts or Takings Clause. None of these arguments stands up to scrutiny.

### A.    *Ex parte Young* Applies Even When Injunctions Have "Direct and Substantial Impacts on State Treasuries."

Defendants' argument that *Ex parte Young* should not apply because the "necessary" outcome of the relief is monetary payments cannot be reconciled with current Supreme Court and Eleventh Circuit precedent.

4

With regard to the Supreme Court precedent, Defendants assert that *Edelman* and *Quern* "held that monetary relief was barred because Congress had not abrogated Illinois's Eleventh Amendment immunity." Appellees' Br., Pg. 29.[1] This misstates the holdings of both cases. In fact, the Court held that prospective relief that has "an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman,* 415 U.S. at 668; *see also Quern*, 440 U.S. at 337 ("a federal court, consistent with the *Eleventh Amendment*, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."); *Milliken*, 433 U.S. at 289 ("*Ex parte Young . . .* permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.").

Rather than distinguishing permissible and impermissible injunctions on the basis of a monetary effect, *Edelman* distinguished these injunctions on whether they were seeking to address past or future

---

[1] Defendants do not dispute that *Milliken* approved an injunction that had direct and substantial impact on the state treasury. *See* Appellees' Br., Pg. 30-31.

5

harms. 415 U.S. at 668. The Court barred claims that sought a "***retroactive*** award of monetary relief," "measured in terms of a monetary loss resulting from a ***past breach*** of a legal duty on the part of the defendant state officials." *Id.* (emphasis added). *Quern* and *Milliken* did not purport to alter this framework. *See Quern*, 440 U.S. at 337 (1979) ("The distinction between that relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other."); *Milliken*, 433 U.S. at 290 (noting the injunction requiring the state to share the costs of educational supports was "ordered into effect *prospectively*," and was not "a retroactive award of money") (emphasis in original).

Here, Plaintiffs fall squarely withing *Edelman's* framework for permissible claims. They seek no compensation for the Boards' past refusals to transfer the value of the TDF. And Plaintiffs' requested relief from future harms closely tracks that approved in *Edelman*. In *Edelman*, the plaintiffs sought an injunction requiring Illinois officials to process benefits claims in such a way as to increase the duration of their coverage. 415 U.S. at 655-56 (injunction requiring state officials'

6

"compliance with the federal time limits for processing and paying AABD applicants" to address the problem of state officials "not including prior eligibility months for which an applicant was entitled to aid under federal law"). This aligns with the relief sought here: declarations and an injunction prohibiting the Board Members from interpreting their Plans in a way that excludes the value of the TDF when calculating future transfer payments. *See* Doc. 15, Pg. 30-31. While Defendants argue that the "necessary and intentional outcome" of these actions is the payment of funds, Appellees' Br., Pg. 27, this falls squarely within the type of relief permitted by the Court in *Edelman*. *See Edelman*, 415 U.S. at 667 ("fiscal consequences to state treasuries [that are] the ***necessary*** result of compliance with decrees which by their terms were prospective in nature" are permissible) (emphasis added).[2]

Failing to identify Supreme Court precedent that supports their desired result, Defendants instead rely on Eleventh Circuit precedent in

---

[2] While *Quern* and *Milliken* involved injunctions seeking slightly different relief, as discussed, neither purported to limit the central holdings of *Edelman*. *See Quern*, 440 U.S. at 336 (permitting injunction to facilitate class plaintiffs' collection of wrongfully withheld past payments through the state administrative process); *Milliken*, 433 U.S. at 288-89 (permitting injunction requiring state to pay half the cost educational measures designed to remediate past discrimination).

the decision *Seminole Tribe of Florida v. Florida Dept. of Revenue*, 750 F.3d 1238 (11th Cir. 2014). Appellees' Br., Pg. 27-29. But the relief sought by Plaintiffs here more closely track the relief sought in this Court's decision in *Maron v. Chief Financial Officer of Florida,* 136 F.4th 1322 (11th Cir. 2025). Critically, Defendants fail to address *Maron's* discussion of sovereign immunity at all.

In *Maron*, Florida passed a law allowing the State to keep certain earnings from unclaimed private property in the State's custody. *Id*. at 1326. The plaintiffs, who intended to seek recovery of these earnings, filed suit under the Takings Clause seeking an injunction declaring the state law unconstitutional and ordering the State to compensate plaintiffs for these earnings in future actions. *Id*. at 1328. There, like here, the Florida officials argued the relief sought "amounts to nothing more than a prospective request for retroactive monetary damages." *Id*. at 1333-34. Following a discussion of *Edelman*, the Court rejected the Florida officials' attempt to characterize the relief sought as retroactive monetary damages: "[the plaintiffs] did not contend that the Department wrongfully denied their claim for property and so must pay them damages for that wrongful denial . . .  Instead, through declaratory and

8

injunctive relief, they requested that when they file a claim down the road, they be justly compensated." *Id.* at 1334 (explaining that a Takings claim alleges an ongoing tort). The relief sought here – ordering the Board Members to include the value of the TDF in calculating future transfers – is indistinguishable from that in *Maron.*

The Eleventh Circuit's earlier decision in *Seminole Tribe of Florida v. Florida Dept. of Revenue,* 750 F.3d 1238 (11th Cir. 2014) does not compel a different result. First, as explained in Appellants' Opening Brief, the outcome in that case turned on the fact that Florida had pre-collected the tax in question, and thus the injunction would require a "recurring refund." *See* Appellants' Opening Br., Pg. 36-38. This holding is consistent with *Edelman* and its progeny, which prohibited relief from past harms. *See Edelman,* 415 U.S. at 668; *Quern* 440 U.S. at 337. And it explains why *Seminole* does not apply here – Plaintiffs seek no remedy for the Board Members' past refusals to transfer full benefits. Defendants make no effort to address this issue.

Nor can *Seminole* be read to prohibit suits that result in "the recovery of money from the state," Appellees' Br., Pg. 27 (quotation omitted). *Edelman* and its progeny expressly contemplated that future

9

relief may come from the state treasury, explaining "an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman*, 415 U.S. at 668; *see also Quern*, 440 U.S. at 337 ("a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury"); *Milliken*, 433 U.S. at 289 ("*Ex parte Young* . . . permits federal courts to enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.").[3] And, in any event, as noted, there is little risk of a burden to the state treasury in the first instance, as the Fund into which Plaintiffs paid – and from which Defendants pay – has a $4 billion surplus. Doc. 15, Pg. 21 ¶ 58.

At bottom, the Amended Complaint seeks the precise type of relief held to be permissible by the Supreme Court and Eleventh Circuit.

---

[3] The confusion likely stems from *Seminole's* reliance on *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), which did not concern the application of *Ex parte Young* at all, but instead the preliminary question of whether a suit is one against the state.

### B. Defendants' Merits Arguments Are Not Relevant to Sovereign Immunity

Next, Defendants argue that the *Ex parte Young* exception should not apply because the relevant cases involve "federal claims legitimately ground in federal law" and not "claims under the Contracts Clause where a state court has already determined such contractual rights do not exist." Appellees' Br. Pg. 29; *see also id.* Pg. 31 (attempting to distinguish *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002)); *id.* Pgs. 32-33 (attempting to distinguish *Maron v. Chief Financial Officer of Florida*, 136 F.4th 1322 (11th Cir. 2025) and *Lipscomb v. Columbus Municipal Separate School District*, 269 F.3d 494 (5th Cir. 2001)); *id.* Pg. 33 (attempting to distinguish *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 949-50 (8th Cir. 2023) and *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002)[4]). This argument is a non-starter.

It is black letter law that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."

---

[4] Notably, *Rossborough Mfg.* concerned an appeal from an order dismissing *both* for lack of jurisdiction and for failure to state a claim. 301 F.3d at 484. Here, Judge Bloom's order dismissing the instant case addressed only sovereign immunity and statute of limitations.

*Verizon*, 535 U.S. at 646); *cf. Maron*, 136 F.4th at 1329 ("When an attack on subject matter jurisdiction implicates an element of a cause of action, we treat the attack as a direct attack on the merits of the plaintiff's case and assume the element is satisfied for jurisdictional purposes.") (quotation omitted). The Court may begin and end its analysis there.

But Defendants' underlying argument – that *Snyder* controls the outcome in this case – is also false. First, as Defendants are aware, there is no direct preclusion here because the issues and parties are different.[5] Nor do *Snyder*'s holdings create binding precedent in the instant case – which raises only federal claims. It is black letter law that a "federal Court is not bound by a state court's interpretations of federal law." *Gallardo v. Dudek*, 963 F.3d 1167, 1180 (11th Cir. 2020); *see also* § 6:10. Interpretation and application of federal law in federal court, 3 Cyc. of Federal Proc. § 6:10 (3d ed.) (same). Indeed, even when a federal court directly reviews a state court decision, "when the existence of an asserted

---

[5] In their motion to dismiss, Defendants initially sought dismissal under the *Rooker-Feldman* doctrine. Doc. 24, Pg. 16-17. The magistrate disagreed, noting differences in both the parties and the issues. Doc. 55, Pg. 16. Defendants did not object. These same infirmities would also bar the more narrow doctrine of issue preclusion going forward. *See, e.g., Disabled, Inc. v. Fort Lauderdale Hosp., Inc.*, 826 F. Supp. 2d 1330, 1338 (S.D. Fla. 2011) (listing the elements of issue preclusion).

federal right or immunity depends upon the appraisal of undisputed facts

of record, or where reference to the facts is necessary to the determination

of the precise meaning of the federal right or immunity, as applied,

[federal courts] are free to reexamine the facts as well as the law in order

to determine for ourselves whether the asserted right or immunity is to

be sustained." *Hooven & Allison Co. v. Evatt*, 324 U.S. 652, 659 (1945)

(*overruled on other grounds by Limbach v. Hooven & Allison Co.*, 466 U.S.

353 (1984)).

As in *Hooven*, here the district court is free to consider the

undisputed facts – the contents of the various statutes, the text of the

Plan and the Board's amendment – in light of the prohibitions of the

Contracts Clause and Takings Clause.[6] Thus, even if the merits of

---

[6] Plaintiffs will argue that *Snyder's* holding regarding the state law claim for breach of contract is not relevant to the constitutional claims here. The constitutional claims seek assess the validity of the TDF law as applied to Plaintiffs' Plans. But *Snyder* assumed the law was valid in the first instance, and then relied upon it to determine the scope of Plan benefits. *See Snyder*, 269 So. 3d at 593-94 ("What undermines Snyder's argument [that the TDF is tuition by another name] is the Legislature's decision to define the TDF separate from tuition or registration fee. *See* §§ 1009.01(1), (3), Fla. Stat. (2007) (defining 'tuition' and 'tuition differential' separately); § 1009.24, Fla. Stat. (2007) (authorizing different rates for tuition and the TDF)."). Thus, applying *Snyder's* analysis to the Contracts Clause claim would yield the circular

13

Plaintiffs' claims were relevant to determining the application of *Ex parte Young* – which they are not – no part of the state court decision in *Snyder* is binding on the district court.

### C. There Is No Basis for Treating Different Constitutional Claims Differently for Purposes of Sovereign Immunity.

Finally, Defendants attempt to distinguish a number of cases on the grounds that they do not involve Contracts Clause or Takings Clause claims. *See, e.g.*, Appellees' Br., Pg. 30-31 (arguing *Milliken v. Bradley*, 433 U.S. 267 (1977) involved "race-based claims recognized as violative of the Fourteenth Amendment"); Appellees' Br., Pg. 32 (arguing *Ex parte Young*, 209 U.S. 123 (1908) involved a challenge to a railroad statute); Appellees' Br., Pgs. 32-33 (arguing *Lipscomb v. Columbus Municipal Separate School District*, 269 F.3d 494 (5th Cir. 2001) concerned different claims).

Defendants offer no explanation for why constitutional claims would be treated differently depending on which constitutional clause or federal statute they proceeded under. Nor do they cite any case law

---

conclusion: the TDF law does not impair the Tuition Plan benefits because the TDF law supports a narrow interpretation of the benefits available under the Plan.

supporting the proposition. To the contrary, relevant caselaw consistently refers to claims brought under "federal law" without distinction. *See, e.g., Ex parte Young*, 209 U.S. 123, 159-160 (1907) ("If the act which the state Attorney General seeks to enforce be a violation of the ***Federal Constitution***, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character") (emphasis added); *Quern*, 440 U.S. at 337 ("under the landmark decision in *Ex parte Young*, 209 U.S. 123 (1908), a federal court, consistent with the *Eleventh Amendment*, may enjoin state officials to conform their future conduct to the requirements of ***federal law***, even though such an injunction may have an ancillary effect on the state treasury") (emphasis added).

Further, Defendants' attempt here to single out Contracts and Takings Clause claims for special treatment underscores the concern that affirming the district court's decision would imperil federal review of these claims. As discussed, the rule adopted by the district court – prohibiting federal review of claims seeking "more than a minor effect on state funds," Doc. 58, Pg. 9 – would foreclose *Ex parte Young* for a

15

majority of Contracts and Takings Clause claims, which frequently concern financial issues. Rather than being less worthy of protection, case law is clear that federal review is especially warranted here. *See Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 505 (5th Cir. 2001) (the danger of abuse of the Contracts Clause is acute "when the State is a party to the contracts," explaining in that case, "the court cannot defer to the State because the State's self-interest as a party is implicated"). As in *Lipscomb*, Florida's self-interest is squarely implicated here.

Instead, Defendants argue that a ruling against them would "commence a whole new canon of jurisprudence of federal law on contract interpretation that would override what is traditionally left to state courts." Appellees' Br., Pg. 35; *see also id.* at Pg. 31. But the Court's decision here would do nothing to alter the outcome in *Snyder*, which has been closed for years. And federal courts have never been bound by state court determinations of federal law. *Gallardo*, 963 F.3d at 1180; *see also* § 6:10. Interpretation and application of federal law in federal court, 3 Cyc. of Federal Proc. § 6:10 (3d ed.) (same). That actions which are

16

permissible under certain state laws might nevertheless be prohibited under different federal laws is not a threat to federalism.

## II.    The District Court Erred in Finding Plaintiffs' Claims Time-Barred

Defendants do not seriously dispute that Plaintiffs bring "as applied" claims, for which the statute of limitations depends on a fact-intensive inquiry focusing on when Plaintiffs could have reasonably learned of their injury. And Defendants' heavy reliance on disputed facts to explain when a reasonable person should have become aware of their injury underscores that this issue was not appropriate for determination on a motion to dismiss. Reversal is warranted.

### A.    Passage of the TDF Law Is Not Determinative for Statute of Limitations Purposes.

Dismissal based on the statute of limitations is appropriate only where "it is apparent from the face of the complaint that the claim is time-barred." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). Defendants fail to meet this high standard.

Where, as here, plaintiffs bring an as-applied challenge[7] to a statute, the statute of limitations runs – not from the date of the passage of the statute – but from the time at which "a person with reasonably prudent regard for his rights" would have been aware of the facts which support his or her cause of action. *Doe v. Swearingen*, 51 F.4th 1295, 1303 (11th Cir. 2022) (ctitations omitted); *see also id.* at 1304 *(*"[t]he statute of limitations for a constitutional challenge to a statute is triggered by injury.").

Thus, all of Defendants' arguments concerning the passage of the TDF law must be viewed through the lens of what a reasonable person in

---

[7] Defendants initially appear to dispute whether Plaintiffs' claims are "as applied." *See* Appellees' Br., Pg. 41 ("[Plaintiff's] have attempted to characterize their clams as an 'as-applied' challenge to the Board's 'independent' interpretation"). But they provide no explanation for why the claims are not "as applied." The claims in the Amended Complaint plainly turn on the application of the TDF law to Plaintiffs' specific Plans – focusing on the year they purchased their plans, and their beneficiaries' choice to attend Non-Florida State Schools. *See* Doc. 15, Pgs. 18-19 ¶51, Pg. 27 ¶¶ 80, 82. This description is consistent with black letter law defining "facial" and "as applied" constitutional challenges. *See, e.g., Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("A facial challenge is . . . a claim that the law or policy at issue is unconstitutional in all its applications" "[a]n as-applied challenge . . . addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (quotation omitted).

18

Plaintiffs' position would have understood. This is a fact-intensive inquiry. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). And, at this stage of the proceedings, the Court is required to view the allegations of the complaint in the light most favorable to Plaintiff, and accept all reasonable inferences therefrom. *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1319 (11th Cir. 2021). Application of the correct standard of review forecloses Defendants' argument.

The starting point for determining whether the passage of the TDF law would have alerted a reasonable person in Plaintiffs' position that their Plan benefits had been diminished is the TDF law itself. *See generally* Appellants' Opening Br. at 54-59 (providing text of TDF Law). But the TDF law simply created a new instructional fee. It did not state that the value of the TDF would be excluded from the value of the transfer benefit in Prepaid Plans for students who attend Non-Florida State Schools. *See id.*; *see also* Doc. 15, Pg. 17 ¶¶ 44-45. And the Plan language did not obviously exclude the TDF. Plaintiffs' Plans covered the "registration fee," which is defined as "the fee charged for tuition." Appellees' Br., Pg. 17. As Defendants' own statement of the facts makes

19

clear, the Florida legislature defined "tuition" as a "fee charged to a student for instruction"; likewise, the "tuition differential fee" is also a "fee charged to a student for instruction." *Id.* Pg. 14. Thus, a reasonable person could interpret the TDF as falling within the Plans benefits.

Defendants point to no specific language in the TDF law they believe would have put Plaintiffs on notice of a different conclusion. Instead, they assert generally: "Plaintiffs were placed on notice of the TDF framework." Appellees' Br., Pg. 42. But to all outside appearances, the "TDF framework" appeared designed to *preserve* the value of the existing Tuition Plans. Doc. 15, Pg. 17 ¶ 47 ("Prepaid touted that with the passage of the exemption, 'The Promise is kept to Families with Plans.'"). Consistent with this, while the TDF law authorized the Board to offer a new TDF Plan, Defendants concede the new TDF Plan was not available to Plaintiffs *unless they cancelled their existing Plans*. Appellees' Br., Pg. 15 n.4. There is no reason that a reasonable Plan holder would look at the text of the TDF law and infer that it would protect their (then pre-school aged) beneficiary from rising college costs if he or she ultimately decided to attend a Florida State School, but

20

punish them if they did not. This is especially true when the statute was silent as to the effect on the transfer benefit.[8]

Defendants' own actions confirm the ambiguity in the TDF law. Years after the passage of the TDF law, the Board unilaterally amended the substantive benefits of Plaintiffs' Plans to state that "tuition" did not include the TDF. Doc. 15, Pg. 18 ¶ 49. Indeed, while Defendants now try to downplay the significance of their amendment, they squarely relied on it when faced with the breach of contract claim in *Snyder*. *See Snyder v. Fla. Prepaid Coll. Bd.*, 269 So. 3d 586, 592-93 (Fla. Dist. Ct. App. 2019) (accepting the Board's argument that its amendment to the Plans was controlling, and that the amendment defeated the plaintiffs' claims for breach of contract and contract clause violation). And the moving target posed by the Board's application of the law continues to the present day. *See* Doc. 15, Pgs. 4-5 ¶ 6; *id.* at Pg. 22 ¶ 63 (in 2020 Defendants

---

[8] Defendants also assert without evidence that "[t]he Legislature's authorization of fees beyond tuition and local fees for state universities was already a known feature." Appellees' Br., Pg. 42. Indeed, even if supported – which it is not – this assertion would not assist Defendants. *See, e.g.*, *Wainberg*, 93 F.4th at 1224 ("dismissal on statute-of-limitations grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred").

21

unilaterally provided refunds and discounts for other students facing TDF costs). Given the ambiguity in the TDF law, and the Board's ongoing adjustments to the Plans in response, Plaintiffs could not reasonably have known their benefits would be diminished until the Board applied the law to their Plans. *Cf. Elend v. Basham*, 471 F.3d 1199, 1207-09 (11th Cir. 2006) (future injury was not sufficiently concrete to confer standing where both the plaintiffs' and state's future conduct was uncertain).

### B.    Plaintiffs Satisfy the Continuing Violation Doctrine

In the alternative, Plaintiffs' statute of limitations may be calculated under the Continuing Violations doctrine. Here, as in *Swearingen*, the Defendants' continuing enforcement actions, exempting the value of the TDF from the transfer benefit, amounts to a continuing injury each semester their beneficiaries are enrolled in a Non-Florida State School. *See* 51 F. 4th at 1308.

Defendants' only response to this is to argue that "Plaintiffs' bald assertions that the Board has independent authority" to pay benefits under Plaintiffs' Plan contracts "is wrong as a matter of law." Appellees' Br., Pg. 43-44 (presumably attempting to frame the injury as the continuing effect of a past violation); *see also id.* at Pg. 12 n.1. While

22

Plaintiffs agree that the Board "may only do what Florida Statutes authorize," Appellees' Br., Pg. 43, here they have that authorization. The statute creating the Board states it "shall independently exercise the powers and duties." Fla. Stat. § 1009.971(1). The Board's powers and duties include the power to "adopt . . . rules," "make and execute contracts," and "[e]stablish other policies, procedures, and criteria to administer and implement [the Prepaid College Board Programs]." Fla. Stat. § 1009.971(4)(b), (d)&(x).

Consistent with these powers, Defendants do not dispute that they had the power to unilaterally amend the benefits in Plaintiffs' Plans and unilaterally offer reductions and discounts to holders of other plans. Doc. 15, Pg. 4-5 ¶ 6; *id.* at Pg. 18 ¶ 49; *id.* at Pg. 22 ¶ 63. And Defendants point to no provision purporting to prevent the Board from determining the scope of plan benefits where state law is silent on the issue. Against this backdrop, it was reversible error for the district court to credit Defendants' claim that they had no power to determine how to apply the TDF law. *See* Doc. 58, Pg. 15; *see also Renfroe v. Nationstar Mortg., LLC,* 822 F. 3d 1241, 1242 (11th Cir. 2016*)* (reversible error to elevate defendant's conclusions above allegations in the complaint).

### III. The Court Should Remand the Case to Allow the District Court to Consider the Merits.

In Section II of their brief, Defendants also argue that Plaintiffs did not satisfy the pleading standard with regard to their claims under the Contracts Clause and Takings Clause. As an initial matter, it is unclear what significance Defendants assign to this argument. It is not identified in their Statement of the Issues or included in the Standards of Review; nor do Defendants request the Court enter any specific relief in conjunction with it. *See generally* Cir. R. 28-1(h), (i), (l) (requirements of principal briefs).

To the extent Defendants offer this argument in support of their claim of sovereign immunity, Plaintiffs reiterate that merits are not relevant in determining sovereign immunity. *See Verizon*, 535 U.S. at 646); *cf. Maron*, 136 F.4th at 1329.

To the extent Defendants offer this argument as an alternative basis to affirm, the Court should also decline this invitation. The district court has not passed on the issues. In the proceedings below, Magistrate Judge Hunt evaluated these arguments and recommended the district court *deny* Defendants' motion to dismiss on this basis. *See* Doc. 55, Pg. 14-23. On review, Judge Bloom rejected the Report and

24

Recommendation, but in so doing she considered only the issues of sovereign immunity and statute of limitations. *See* Doc. 58. Judge Bloom did not conduct a *de novo* review of the issues relating to the sufficiency of the pleadings. *Id.*; *see also* 28 U.S.C.S. § 636 (setting forth the requirement of *de novo* review of magistrate's recommendations); *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512-13 (11th Cir. 1990) (de novo review "require[s] independent consideration of factual issues based on the record").

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1240 n.26 (11th Cir. 2020). Here, there is no reason to depart from the rule – the merits questions concern several complex issues of law. *See supra* Sec. I.B. This Court would benefit from a substantive discussion by the district court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court reverse the district court's dismissal of the case, finding Plaintiffs' claims fall within the *Ex parte Young* exception to sovereign immunity and that

25

Plaintiffs' claims are not time-barred, and remand the case for further consideration of the merits.

Dated: October 20, 2025

Respectfully submitted,

/s/ *Alec H. Schultz*
**HILGERS GRABEN PLLC**
Alec H. Schultz
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
(305) 630-8304
aschultz@hilgersgraben.com

Jennifer M. Erickson Baak
600 17th Street
Denver, CO 80202
(773) 407-5502
jericksonbaak@hilgersgraben.com

**BERGER SINGERMAN LLP**
Mark S. Fistos, Esq.
Florida Bar No. 909191
201 East Las Olas Blvd.
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone: (954) 525-9900

mfistos@bergersingerman.com
rpendas@bergersingerman.com
drt@bergersingerman.com

Counsel for Plaintiffs-
Appellants

26

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the word count limitations set forth in Fed. R. App. P. 32(a)(7)(B) because it 5,374 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2509 Build 16.0.19231.20138) 64-bit in Century Schoolbook 14-point font.

Dated: October 20, 2025.

/s/ Alec H. Schultz
Alec H. Schultz

27

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that on October 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Alec H. Schultz
Alec H. Schultz